529 A.2d 1143

Council 13, American Federation of State, County and Municipal Employees, AFL-CIO, by its Trustee Ad Litem, Edward J. Keller, Petitioner *v.* Commonwealth of Pennsylvania, The Honorable Richard Thornburgh, Governor of the Commonwealth of Pennsylvania, et al., Respondents.

Argued April 22, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Stuart W. Davidson,* with him, *Alaine S. Williams, Kirschner, Walters &. Willig,* for petitioner.

*Susan J. Forney,* Senior Deputy Attorney General, with her, *Andrew S. Gordon,* Deputy Attorney General, *Robert J. Schwartz,* Deputy Attorney General, *Debra K. Wallet,* Deputy Attorney General, *Allen C. Warshaw,* Deputy Attorney General, Chief, Litigation Section, *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., July 31, 1987:

In April 1982, the legislature enacted amendments to the Commonwealth Public Welfare Code[1] provisions

---

[1] Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§101—1503.

establishing a Community Work Experience Program (CWEP).[2] Individuals receiving aid to families with dependent children or general assistance benefits were, with certain enumerated exceptions, required to register for employment, training and manpower services. Commonwealth departments, agencies and political subdivisions could submit proposed community work projects to the Department of Public Welfare (DPW) and, if approved, would receive CWEP registrants. Hired applicants would work approximately fifty hours a month at a minimum wage level.

As the CWEP was being implemented, Council 13, American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME), the certified bargaining unit for Commonwealth employees, filed a petition for review in this Court's original jurisdiction[3] requesting declaratory and injunctive relief as to the usurpation of AFSCME bargaining unit positions by CWEP workers. AFSCME's injunctive action, filed in May 1983, was stayed by mutual consent of the parties so that arbitration concerning specific grievances of the existing collective bargaining agreement could be pursued.

Finding the outcome of that proceeding unsatisfactory, AFSCME filed a motion for summary judgment on October 16, 1986. This motion was subsequently amended to be regarded and acted upon as a motion for judgment on the pleadings.[4] The Commonwealth filed

---

[2] Section 405 of the Public Welfare Code authorized the Department to establish rules, regulations and standards for the CWEP program. Sections 4 and 5 of the Act of April 8, 1982, P.L. 231, 62 P.S. §§405.1, 405.2, supplemented the directive of Section 405 of the Public Welfare Code.

[3] 42 Pa. C. S. §761(a).

[4] The motion to amend was unopposed and granted by this Court on January 16, 1987.

its cross-motion for summary judgment on February 27, 1987.

In support of its motion for summary judgment, the Commonwealth has submitted eight affidavits[5] of department officials who reviewed the implementation of the CWEP. In rebuttal, AFSCME presents the affidavit of its Director of the Grievance Department, the transcript of the arbitration proceeding, and arbitrator Arvid Anderson's decision.

When considering a motion for *judgment on the pleadings,* a court must limit its review of the facts to those appearing in the pleadings themselves. *Puleo v. Broad Street Hospital,* 267 Pa. Superior Ct. 581, 407 A.2d 394 (1979). The moving party admits the truth of all allegations of his adversary and the untruth of his own allegations which have been denied. *Tate v. Penn-*

---

[5] The officials and their positions are:

**Craig Ford**—Director of Bureau of Food Stamps and Work Registration Programs, Office of Income Maintenance, Department of Public Welfare

**William Kennedy**—Chief, Personnel Management Review Division, Office of Administration

**Barry Garver**—Chief, Classification and Placement Division, Bureau of Personnel, Department of Transportation

**Larry Toth**—Chief, Placement, Employee Benefits and Transaction Division, Office of Personnel Services, Department of Public Welfare

**Leslie Burnett**—Director, Bureau of Labor Relations, Department of Public Welfare

**John S. Dunn, Jr.**—Chief, Employee Relations and Safety Division, Bureau of Personnel, Department of Environmental Resources

**Dennis Farley**—Director of Personnel, Department of Environmental Resources

**Charles Sciotti**—Deputy Secretary, Employee Relations, Office of Administration

**Petitioner, E. Michael Fox**—Director, Grievance Department, AFSCME.

*sylvania Board of Probation and Parole,* 40 Pa. Commonwealth Ct. 4, 396 A.2d 482 (1979). Judgment on the pleadings should be granted only when the case is free from doubt and trial would be a fruitless exercise. *City of Philadelphia v. Hennessey,* 48 Pa. Commonwealth Ct. 600, 411 A.2d 567 (1980).

In ruling on a motion for *summary judgment,* a court must consider not only the pleadings but other documents of record, such as affidavits and exhibits. *See Spain v. Vicente,* 315 Pa. Superior Ct. 135, 461 A.2d 833 (1983). Again, however, for summary judgment to be entered, the movant's right must be clear and no doubt as to a genuine issue of fact exist. *Simpson v. Pennsylvania Board of Probation and Parole,* 81 Pa. Commonwealth Ct. 432, 473 A.2d 753 (1984).

The Federal enabling act, 42 U.S.C. §609, authorizes states to establish a CWEP so as to "provide experience and training for individuals not otherwise able to obtain employment, in order to assist them to move into regular employment." This Commonwealth's implementing provisions recognize and adhere to federal regulations delineating CWEP operating procedures. Sections 405, 405.1, 405.2 of the Public Welfare Code, 62 P.S. §§405, 405.1, 405.2. For our purposes, 45 C.F.R. §238.52, establishes certain project requirements:

The state plan must provide that CWEP projects—

. . . .

(b) Do not result in the displacement of persons currently employed or the filling of established, unfilled position vacancies. This means that CWEP participants may not perform tasks which would have been undertaken by employees or which have the effect of reducing the work of employees. However, CWEP partici-

pants may perform the same type of tasks as performed by employees;

. . . .

(e) Have not been developed in response to, or in any way associated with, the existence of a strike, lockout or other bona fide labor dispute, nor can the project violate any existing labor agreement between employees and employers.

These constraints are mirrored in pertinent Commonwealth regulations. 62 P.S. §405.2.

In its petition for review, AFSCME alluded to the December 1982 state hiring freeze and the serious decline in bargaining unit positions, resulting in some 5,000 vacant positions from 1979 to 1983. Petition for Review, paragraphs 15, 16, 17. Next, after citing the controlling federal and state CWEP provisions, AFSCME averred, specifically:

25. Since January, 1983, the Commonwealth of Pennsylvania has sought to employ GA and AFDC recipients under the CWEP project and assign them to job classifications in the AFSCME bargaining units. At this time, Respondents Dickman and Zervanos have, to date, assigned CWEP participants to laborer, custodian, and clerical jobs, among others, in the following departments: Aging, Education, Environmental Regulation, Fish and Game Commission, General Services, Health, Historical and Museum Commission, Insurance, Revenue and Transportation. Additional assignments are anticipated.

26. As of April 25, 1983, Respondents Dickman and Zervanos advised AFSCME that the Commonwealth was placing approximately 1,000 CWEP participants into AFSCME bargaining unit positions. Exhibit 'C.'

The Commonwealth, in its answer, responded:

25.  ADMITTED that since January, 1983, the Commonwealth of Pennsylvania has placed GA and AFDC recipients under the CWEP program in job classifications assigned to AFSCME bargaining units. It is also ADMITTED that CWEP participants assigned to laborer, custodian and clerical jobs have been placed in the departments listed and that additional assignments are anticipated. It is DENIED that Respondents Dickman and Zervanos actually assigned CWEP participants.

26.  ADMITTED.

Upon these answers, AFSCME supports its motion for judgment on the pleadings. AFSCME's petition and its memoranda in support of its motion for judgment on the pleadings indicate that it is seeking a declaration that the creation of the CWEP in this Commonwealth violated statutory requirements because vacant, permanent employee positions were being filled by CWEP workers. The Commonwealth responds that the two paragraphs should not be viewed in a vacuum and that when read in conjunction with the remaining answers to the petition for review[6] an ambiguity as to the definition of the term "AFSCME bargaining unit position" is created.

Our review of the pleadings, however, presents several factual issues which preclude judgment being entered thereon. Indeed, the Commonwealth denied all express averments which stated that the CWEP violated state and federal law. Moreover, AFSCME repre-

---

[6] The Commonwealth filed its original answer on June 16, 1983. It filed a motion for leave to amend answer on February 3, 1987. This application was denied on March 6, 1987. Although counsel for the Commonwealth orally renewed the request for amendment at argument before the Court en banc, this Court declines to reconsider our prior Order.

sents over 60,000 statewide bargaining unit positions classified into numerous levels, districts and divisions. In light of the Commonwealth's complex organization and management process over its personnel, the many factors which impact on the term AFSCME bargaining unit preclude an entry of a judgment on the pleadings. This dichotomy will be reviewed more fully below.

Turning to the Commonwealth's motion for summary judgment, we note that it relies on the various officials' affidavits[7] to support its argument that CWEP has been implemented and operated consistent with federal and state regulations. The Commonwealth readily admits that numerous, vacant AFSCME bargaining unit positions exist, however, it asserts that CWEP assignments were reviewed so as to *not* impact on AFSCME positions which were vacant, had a recall list in place, or had employees with placement rights to the job.[8] For example, if the Philadelphia district had open-

---

[7] The Departments of Public Welfare, Transportation and Evironmental Resources were the principal participants of the CWEP.

[8] The affidavit of Barry Garver had attached to it a policy memorandum to District Personnel Offices, which stated:

It is understood that specific agency CWEP assignments will have to be monitored and responded to on a case-by-case basis. We also expect that there might be more grievances protesting specific assignments for CWEP participants. In reviewing requests for specific CWEP assignments or grievances protesting specific CWEP assignments, the following items should be reviewed:

1. Is there a recall list in place for the work unit?

2. Are there employees who have placement rights to jobs within the work unit?

3. Is the assignment to CWEP participants over and above what could be done by the current work force?

4. Would the work to be done by CWEP participants have been undertaken by regular employes were the CWEP participants not available?

ings in the laborer position, no CWEP workers would be assigned thereto. However, if in Pittsburgh the complement were full, CWEP workers could perform laborer duties.

The Federal enabling act and implementive regulations clearly recognize that state agencies would be participants in the CWEP. However, the federal guidelines are specific in that CWEP assignments not infringe on regular state employment personnel. This promulgation precludes assignment to working, furloughed and vacant personnel positions.

For this Court to determine in a summary fashion that such violations have or have not occurred is certainly a burdensome task. However, upon review of the Commonwealth affidavits and the arbitration transcript and decision, certain salient factors come into focus which permit this Court to enter judgment at this time.

This action was initiated in May 1983 with a request for a preliminary injunction. This Court's docket reflects that soon thereafter AFSCME requested a continuance of argument scheduled thereon. Praecipe for relisting was again withdrawn on January 4, 1984, so that arbitration could be sought. Active litigation in this Court did not recommence until October 16, 1986, when

---

5. Are there any vacancies in the work unit where CWEP participants are utilized?

6. Were jobs left vacant because work was assigned to the CWEP participants? (Are there ongoing efforts to fill vancanies?)

7. Are CWEP participants performing mandated functions of the agency on a permanent or temporary basis?

8. Were any regular employes reassigned to other functions as the result of the use of CWEP participants?

9. Are the CWEP participants providing backup assistance to regular staff?

These questions should be asked before any assignments are made for CWEP participants.

AFSCME filed its motion for summary judgment (later amended to motion for judgment on the pleadings).

The two days of arbitration hearings in March and May 1984 led the arbitrator to conclude in a well-reasoned opinion dated June 20, 1985, that "for the most part the CWEP program has been carried out without violating either the CWEP program guidelines or AFSCME's collective bargaining agreement. But, there are significant exceptions where the record shows that CWEP program participants were assigned to do work that normally would be performed by regular Commonwealth employees and would have been performed by them in the absence of the availability of CWEP participants."[9]

The arbitrator then directed the Commonwealth to discontinue assigning CWEP workers at four projects but upheld the assignments at six other projects.

The Commonwealth affidavits, which for the most part are dated February 1987, acknowledge that these violations had occurred in the past but that remedies have been effectuated since then.[10]

---

[9] Arbitration Decision, page 16, re: Case Nos. 83-1290 and 1291, 13-SW-323 and 324.

[10] Barry Garver's affidavit reads:

12. When CWEP participants have been used in ways other than those permitted by the regulations and the collective bargaining agreement, the Department has corrected the situation promptly.

13. After the Anderson arbitration award was issued, the Department reiterated its policy and set forth additional guidelines for the utilization of CWEP participants. The policy and guidelines were set forth in a memorandum prepared by my Division for Sharon S. Wright, Director of the Bureau of Personnel, to be disseminated to the persons responsible for implementing CWEP in the field. A true and correct copy of that memorandum is attached hereto and incorporated as Garver 1.

AFSCME does not at this time challenge any present Commonwealth CWEP assignment practices.

Thus, this Court is reviewing past practices which the Commonwealth admits constituted violations of federal and state CWEP guidelines. Hence, since the Commonwealth seeks summary judgment on the ground that undisputed facts entitle it to judgment as a matter of law, judgment is denied.

Moreover, in the interest of judicial economy and taking notice of the arbitrator's retention of jurisdiction over grievance procedures, we shall proceed further in this matter and consider whether summary judgment should be entered in favor of AFSCME, although it did not move for such relief. *Bensalem Township School District v. Commonwealth,* 105 Pa. Commonwealth Ct. 388, 524 A.2d 1027 (1987).

---

Leslie Burnett's affidavit reads:

8. Over the last year and a half, our Bureau has received 31 CWEP grievances at the third step.

9. Based on our investigations only two of those grievances uncovered problems requiring adjustments at the project site.

10. The first problem arose because a County Assistance Office was using a CWEP participant to do typing while an Emergency Assistance Clerk Typist 2 was on furlough.

11. The problem was corrected by creating a permanent position for the furloughed employees.

12. The second problem arose because CWEP participants were being trained to use the Visual Display Terminals.

13. The problem was corrected by discontinuing the practice.

14. The remaining grievances are being processed through the fourth step of the grievance process, which is arbitration.

15. To date they have not been resolved.

AFSCME seeks to have this Court declare that CWEP assignments to bargaining unit positions violate federal and state law. To the extent the record reveals past violation of these acts, summary judgment is granted in favor of AFSCME.

ORDER

Petitioner's motion for judgment on the pleadings is denied.

Respondents' cross-motion for summary judgment is denied.

Summary judgment is entered in favor of Petitioner. Judges MACPHAIL, BARRY and PALLADINO dissent.